1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SONY GRAND WEGA KDF-E A10/A20 SERIES REAR PROJECTION HDTV TELEVISION LITIGATION | **LEAD CASE NO: 08-CV-2276-IEG (WVG)**<br><br>MEMBER CASE NOS:<br><br>09-CV-0620-IEG (WVG)<br><br>09-CV-0736-IEG (WVG)<br><br>09-CV-2703-IEG (WVG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>[Doc. No. 52] |

Presently before the Court is Defendants' motion to dismiss Plaintiffs' First Amended Consolidated Complaint ("FACC") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b), brought by Defendants Sony Corporation of America ("SCA"), Sony Electronics Inc. ("SEI"), and Sony Corporation ("SC," and collectively, "Sony" or "Defendants"). Doc. No. 52. Plaintiffs have opposed the motion, Doc. No. 55, and Defendants have replied to that opposition. Doc.

No. 56.  Both parties appeared before the Court for oral argument on November 8, 2010.  For the reasons stated herein, the Court **GRANTS WITH PREJUDICE** Defendants' motion to dismiss.

## FACTUAL BACKGROUND

This case is a putative class action.  Plaintiffs are a group of individuals who purchased and used Sony Grand WEGA KDF-E A10 and A20 Series televisions that were manufactured by Defendants and offered for sale beginning in the second half of 2005 ("2005 Models" or "televisions"). Sony marketed the televisions as offering superior picture quality to that of standard televisions and being capable of taking full advantage of High-Definition Television ("HDTV") programming.[1] Plaintiffs paid $2,500 or more for the televisions.

Sony expressly warranted the televisions for one year.  The express, limited warranty ("Express" or "Limited Warranty") provided that, at the conclusion of the one-year Express Warranty period, all express and implied warranties would be waived.[2]

At sometime after the Express Warranty period ended, the televisions began to display anomalies, including bright blue, yellow, and green spots, stains, and haze.  Those anomalies were allegedly caused by a defect inherent in the LCD rear-projection technology utilized in the televisions'

---

[1] HDTV refers to a method of portraying television images with a high degree of detail and accuracy.

[2] The Limited Warranty provides, in relevant part:

Sony Electronics Inc. ("Sony") warrants this Product (including any accessories) against defects in material or workmanship as follows:

1. LABOR: For a period of one (1) year from the date of purchase, if this Product is determined to be defective, Sony will repair or replace the Product, at its option, at no charge, or pay the labor charges to any Sony authorized service facility. After the Warranty Period, you must pay for all labor charges.

2. PARTS: In addition, Sony will supply, at no charge, new or rebuilt replacements in exchange for defective parts for a period of one (1) year . . . . After the warranty period, you must pay for all parts costs.

. . . .

To obtain warranty service, you must take the Product, or deliver the Product freight prepaid, in either its original packaging or packaging affording an equal degree of protection, to any authorized Sony service facility.

1   "optical block"—the component part of the televisions that causes the video signal to be displayed as a

2   picture on the viewing screen.  Replacing an optical block in the 2005 Model televisions costs

3   approximately $1,500, including labor.  Plaintiffs claim they requested that Sony, free of charge, repair

4   the optical blocks in the malfunctioning televisions.  However, because the alleged defect did not

5   manifest itself until after the warranty expired, Sony refused to repair the problem at no cost.

**PROCEDURAL HISTORY**

7        Nearly two years and four complaints after its inception, this matter lingers in the pleading

8   stage.[3]  Plaintiffs filed the original complaint on December 8, 2008, which was initially assigned to

9   Judge Whelan.

10        Sony moved to dismiss the original complaint.  Docket No. 4.  The parties thereafter agreed that

11   if Defendants withdrew that motion then Plaintiffs would file an amended complaint.  Doc. No. 7.

12   Plaintiffs filed their First Amended Complaint on February 18, 2009, Doc. No. 8, and Sony filed a

13   second motion to dismiss on March 20, 2009.  Doc. No. 12.  Plaintiffs' counsel filed two other related

14   actions in this court: (1) <u>Bolton et al. v. Sony Corp. of America, Inc., et al.</u>, No. 09-CV-0620, on

15   March 25, 2009, and (2) <u>Bashore, et al. v. Sony Corp. of America, Inc., et al.</u>, No. 09-CV-0736, on

16   April 10, 2009.  Soon thereafter, Plaintiffs moved to consolidate all three actions.  Doc. No. 17.  On

17   July 30, 2009, the Court granted Plaintiffs motion to consolidate and denied Sony's then-pending

18   motion to dismiss as moot.  Doc. No. 25.

19        On August 14, 2009, Plaintiffs filed a Consolidated Complaint alleging eight causes of action

20   against Defendants.  Doc. No. 26.  In short, Plaintiffs allege that Sony knew about the defect in the

21   optical block at the time the televisions were sold, making the televisions defective upon delivery.

22   Defendants responded by filing a motion to dismiss on September 3, 2009.  Doc. No. 27.

23        Judge Whelan stayed the case on October 28, 2010, pending the outcome of a referral to the

24   Judicial Panel on Multidistrict Litigation.  Doc. Nos. 32 & 37.  Judge Whelan lifted the stay on

25   November 17, 2010, Doc. No. 37.  On February 2, 2010, Plaintiffs moved to consolidate a third related

26

27       [3] The Court acknowledges that, though Plaintiffs have filed four separate complaints, this is
   only the second version to receive judicial attention on the merits.  Nonetheless, the number of filings
   in this case, the collateral issues that have arisen with related cases in this and in other Courts, and the
28   length of time that has passed since Plaintiffs initially filed their complaint, have been quite unusual.

case filed in this Court—Mayer v. Sony Corp. of America, Inc., et al., No. 09-CV-2703— with the previously consolidated cases and to appoint interim counsel.  Doc. No. 38.  Judge Whelan granted those motions.  Doc. No. 48.

The parties later filed a joint motion to strike three paragraphs of the complaint regarding confidential sources at Sony, which Judge Whelan granted.  Doc. Nos. 40 & 41.

On August 6, 2010, the Court granted-in-part and denied-in-part Defendants' motion to dismiss, and dismissed, with leave to amend, seven of Plaintiffs' eight causes of action.  Judge Whelan denied the motion to dismiss the claim for breach of Express Warranty.

On August 12, 2010, the case was reassigned to Chief Judge Gonzalez.

Plaintiffs filed the FACC on August 30, 2010, which sets forth the same eight causes of action included in the first consolidated complaint: (1) Unlawful and Unfair Business Acts and Practices in Violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200-17210; (2) Untrue and Misleading Advertising in Violation of California's False Advertising Law ("FAL") CAL. BUS. & PROF. CODE §§ 17500-17509; (3) Unlawful Practice in Sale of Consumer Goods in Violation of California Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750-1784; (4) Unfair and Deceptive Acts and Practices Under the Various State Laws in Which Class Members Reside; (5) Violations of California Song-Beverly Consumer Warranty Act ("Song-Beverly Act" or "SBA"), CAL. CIV. CODE §§ 1790-1795.8; (6) Violations of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act" or "MMWA"), 15 U.S.C. §§ 2301-2312; (7) Breach of Express Warranty; and (8) Breach of Implied Warranty.  Defendants filed the current motion to dismiss all eight of the FACC's claims on September 9, 2010.[4]  Doc. No. 52.  Plaintiffs timely filed an opposition to the motion, Doc. No. 55, to which Defendants timely replied.  Doc. No. 56.

---

[4] Defendants have also requested that the Court take judicial notice of various documents, Doc. No. 53, and Plaintiffs have not opposed that request.  Moreover, Plaintiffs' FACC references each of the documents in question.  Good cause appearing, the Court **GRANTS** Defendants' request and, pursuant to Federal Rule of Evidence 201, takes judicial notice of the following seven documents:

    1. Sony Electronics Inc.'s Limited Warranty Statement for the Sony Grand WEGA KDF-E A10 and A20 Series LCD Rear Projection HDTV Televisions (the "Limited Warranty");

Plaintiffs' FACC added two named plaintiffs.  One of them is a California resident, bringing the number of named plaintiffs from California to two.  Doc. No. 51.  Plaintiffs also attempted to strengthen their allegations that Sony was aware of the defect based on (1) certain patent applications filed by Sony and (2) Sony's experience with earlier-model televisions that Sony began selling in 2003 ("Predecessor Models" or "2003 Models"), which "utilize[d] the same core technology in the design of their Optical Blocks" and experienced problems due to the same defect.  Id. ¶¶ 64-66.  The remainder of the FACC is identical to the First Consolidated Complaint.

**DISCUSSION**

**I.**     **Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a) (2009).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  The Court is not bound, however, to accept "legal conclusions" as true. Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009).

---

2.   United States Patent Number 6,132,049, "Picture display apparatus and cooling apparatus for optical apparatus," filed September 11, 1998, and issued October 17, 2000;

3.   United States Patent Number 7,123,33 B2, "Liquid Crystal Display Device and Liquid Crystal Projector Device," filed December 4, 2001, and issued October 17, 2006;

4.   United States Patent Number 5,757,443, "Transmission-Type Display Device With a Heat-Dissipating Glass Plate External To At Least One Liquid Crystal Substrate," filed October 11, 1996, and issued May 26, 1998;

5.   United States Patent Number 7,535,543 B2, "Liquid Crystal Display Apparatus and Cooling Device," filed November 29, 2005, and issued May 19, 2009;

6.   Sony Electronic Inc.'s Operating Instructions for the Sony Grand WEGA KDF-E A10 and A20 Series LCD Rear Projection HDTV Televisions (the "Operating Instructions"); and

7.   Complaint in the action entitled Omerod, et al. v. Sony Electronics Inc., et al., Superior Court of California, County of San Diego, Case No. 37-2009-00085333-CU-BT-CTL, filed on March 16, 2009.

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> (citation omitted). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

But "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 1950. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

Complaints alleging fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. A pleading is sufficient under Rule 9(b) if it "state[s] the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.</u>, 661 F.2d 776, 782 (9th Cir.1981) (citations omitted); <u>see also</u> <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Cooper v. Picket</u>, 137 F.3d 616, 627 (9th Cir. 1997)) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Additionally, "the plaintiff must plead facts explaining why the statement was false when

it was made."  Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted); see In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

Regardless of the title given to a particular claim, allegations grounded in fraud are subject to Rule 9(b)'s pleading requirements.  See Vess, 317 F.3d at 1103-04.  Even where fraud is not an essential element of a consumer protection claim, Rule 9(b) applies where a complaint "rel[ies] entirely on [a fraudulent course of conduct] as the bases of that claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Vess, 317 F.3d at 1103-04); Brothers v. Hewlett-Packard Co., No. C-06-02254 RMW, 2006 WL 3093685, at *7 (N.D. Cal. 2006).

**III.    Analysis**

The Court addresses the sufficiency of each of Plaintiffs' eight claims below, largely in the order that they were pleaded in the FACC.  Because Plaintiffs' first four causes of action arise under various consumer protection statutes with similar pleading requirements—California's UCL, FAL, and CLRA, as well as alternative claims under various other states' consumer protection statutes—the Court will first address the issues common to those four claims, and will next discuss issues specific to each individual claim.  The Court then addresses Plaintiffs' fifth through eighth causes of action in the order they were pleaded, except that the court addresses Plaintiffs' sixth cause action, for violations of the Magnuson-Moss Act, last.

For the reasons stated below, the Court **GRANTS** Defendants' motion to dismiss each of Plaintiffs' eight causes of action under Federal Rules of Civil Procedure 12(b)(6) and 9(b).[5]  Because it appears to the Court that Plaintiffs cannot amend their complaint to sufficiently state any of their claims, the Court **DISMISSES** Plaintiffs' claims **WITH PREJUDICE**.

---

[5] Because the Court, pursuant to Rules 12(b)(6) and 9(b), finds that Plaintiffs have failed to state any valid claims, it is unnecessary for the Court to address the issues of (1) whether Plaintiffs have standing under Rule 12(b)(1) to seek injunctive relief, or (2) whether Sony Corporation of America, Inc. and Sony Corporation are proper defendants.

**A.** **Plaintiffs' First Four Causes of Action: Claims Under Various Consumer Protection Statutes.**

Plaintiffs' first four causes of action arise under three California consumer protection statues—the UCL, the FAL, and the CLRA—as well as consumer protection statutes from approximately forty other states ("Consumer Protection Statutes").  Plaintiffs' claims under each of those statutes stem from the same basic allegations: (1) at the time Plaintiffs purchased the televisions, Sony was aware that the televisions' optical block suffered from a latent defect that would negatively affect the quality of the images displayed by the televisions; (2) despite its awareness of the defect, Sony, in advertisements and other marketing materials, misrepresented the quality of the televisions by claiming they were of "high," "superior," and "excellent" quality; that the televisions offered a picture quality far superior to that offered by standard televisions; and that the televisions were able to take full advantage of HDTV programming and to reproduce video programs with a clear picture and accurate color reproduction; (3) Sony omitted any mention of the defect to consumers; (4) Sony's claims about the televisions' quality induced consumers to pay $2,500 or more for the televisions; and (5) rather than function as Sony advertised, the televisions eventually displayed colorful spots and other blemishes that interfered with the picture.  Such claims are rooted in theories of fraudulent concealment and fraudulent misrepresentation and therefore must satisfy Rule 9(b)'s heightened pleading requirements.  See Meinhold v. Sprint Spectrum, 2007 WL 1456141, at *6 (E.D. Cal. 2007) (California consumer protection claims that manufacturer knowingly made false statements concerning products were subject to Rule 9(b)); Brothers, 2006 WL 3093685, at *6-7 (applying Rule 9(b) where allegations that manufacturer was aware of defect and made misrepresentations about products); see also Meserole v. Sony Corp. of Am., Inc., No. 08 Cv. 8987 (RPP), 2009 WL 1403933, at *3 (S.D.N.Y. May 19, 2009) (finding, in a nearly identical case involving the Plaintiffs' counsel and the same Defendants as in this matter, that Rule 9(b) applies because "the crux of Plaintiffs' claim is that Sony was aware of the design defect inherent in the Optical Block but intentionally failed to disclose its existence to consumers").

Plaintiffs have failed to plead their Consumer Protection claims with sufficient particularity to satisfy Rule 9(b).  *First*, in addition to failures particular to each of the specific statutes, the claims under the Consumer Protection Statutes fail because the alleged misrepresentations are nothing more

than mere puffery.  "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."  Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (internal quotation marks and citations omitted), *aff'd by* 322 Fed. Appx. 489 (9th Cir. Apr. 2, 2009).  Vague or highly subjective claims about product superiority amount to non-actionable puffery; only "misdescriptions of specific or absolute characteristics of a product are actionable."  Id. (quoting Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997)).  Thus, "generalized and vague statements of product superiority such as 'superb, uncompromising quality' . . . are non-actionable puffery."  Id. (citations omitted).

Plaintiffs in this case have not alleged that Sony made any misstatements about absolute characteristics of the televisions.  Instead, Plaintiffs rest their claims on alleged representations that the televisions were of "high" or "superior" quality.  See FACC ¶¶ 56-58, 71, 74.  Such statements are mere puffery and cannot support a claim under the UCL, FAL, or CLRA.  See Oestreicher, 544 F. Supp. 2d at 973-74 (dismissing UCL and FAL claims based on "generalized and vague statements of product superiority"); Tietsworth v. Sears, --F. Supp. 2d--, 2010 WL 1268093, at *10-12 (N.D. Cal. Mar. 31, 2010) (dismissing UCL and CLRA claims because the defendant's representations "that the [product in question was] 'designed, manufactured and tested for years of dependable operations' . . . are mere puffery, . . . and they as a matter of law could not deceive a reasonable consumer"); see also Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139-41 (C.D. Cal. 2005) (finding representations that a notebook computer was of "high quality," was "reliable," offered "high performance," and employed the "latest technology" amounted to non-actionable puffery, while representations that the computers included "brand-name components" and were subject to the "most stringent quality control test" were actionable because they were specific factual allegations which could be proved or disproved through discovery).

*Second*, even to the extent that one might construe any of Sony's representations as relating to absolute characteristics, Plaintiffs have not sufficiently alleged that those representations were untrue or misleading at the time they were made.  Plaintiffs have only alleged that the televisions stopped rendering a quality image after some unspecified period of time—but, in any event, not until after the warranty period expired.  A manufacturer's failure to disclose a fact that it has no affirmative duty to disclose cannot be "likely to deceive" reasonable consumers.  See Daugherty v. Am. Honda Motor Co.,

9

<u>Inc.</u>, 144 Cal. App. 4th 824, 833-38 (2006) (discussing the UCL and the CLRA).  For a statement to be deceptive or misleading, consumers must have held expectations about the matter in question.  <u>Id.</u> Where a manufacturer has expressly warranted a product, consumers can only expect that product to function properly for the length of the manufacturer's express warranty.  <u>See id.</u>  Plaintiffs have not alleged that the televisions failed to live up to Sony's representations during the term of the Express Warranty.  Thus, even if the Court were to construe any of Sony's representations about the televisions as more than mere puffery, Plaintiffs still have not sufficiently alleged that Sony engaged in conduct that was likely to deceive consumers.

Furthermore, Plaintiffs have failed to offer sufficiently particularized allegations showing that Sony was aware of the defect when Plaintiffs purchased the televisions.  Such allegations would have offered at least some support to the notion that Sony's representations about the quality of the televisions were false at the time they were made.

Relatedly, it is worth noting that, in dismissing the consumer protection allegations raised under California law in Plaintiffs' Consolidated Complaint, Judge Whelan highlighted the need for Plaintiffs to specifically allege what Sony knew about the defect at the time that it made the alleged misrepresentations.  Doc. No. 48, at 11 (noting the need for specific allegations about Sony's knowledge of the defect at the time it made the alleged misrepresentations for Plaintiffs' claims under California consumer protection laws, generally, and then noting the same need for claims under the UCL and FAL, specifically).  Plaintiffs' attempts in the FACC to bolster their claims that Sony was aware of the defect are not sufficient.

Plaintiffs rely heavily on several patent applications filed by Sony between 1998 and 2006.  Plaintiffs do not link any of the patent filings to the 2005 Models; nor do the patent filings themselves evince any knowledge of the defect on Sony's part.  Plaintiffs quote language from the patent applications that discusses certain "disadvantages" of LCD technology, but that language describes the then-current state of LCD technology, generally; it does not show that Sony was aware of any defects specific to any of its televisions, let alone to the 2005 Models.

Moreover, even if the Court were to infer from the patent filings that Sony was aware of a problem with the televisions' optical blocks, nothing in Plaintiffs' complaint or in the proffered patent filings indicates the time it takes that problem to cause any deterioration in the images produced by the

1  televisions.  In other words, Plaintiffs' claims suggest that Sony represented that the televisions were

2  of high quality but knew the defect would cause the televisions to falter shortly after the one-year

3  Express Warranty term expired.  But Plaintiffs do not specifically allege as much, and nothing in the

4  proffered patent filings indicates whether Sony's engineers believed the "disadvantages" mentioned

5  would negatively affect the images rendered by the televisions in, for example, one, two, ten, or more

6  years.

7          Plaintiffs' allegation that Sony's experience with predecessor models made Sony aware of the

8  defect is similarly unconvincing.  Plaintiffs do not allege that the 2005 Models used optical blocks

9  identical to those in predecessor models.  They also fail to identify any specific similarities between

10  the optical blocks used in the 2003 and 2005 Models.  Nor do Plaintiffs attempt to show that Sony was

11  or should have been aware that any technological advances applied to the 2005 Models would have

12  been insufficient to cure the defect that allegedly plagued the 2003 Models.

13          In short, for each of their Consumer Protection claims, and despite Judge Whelan's explicit

14  admonishment on this very issue, Plaintiffs fail provide anything more than conclusory allegations to

15  show that any of Sony's alleged representations were false or misleading at the time they were made.

16  Those claims fail as a result, and the Court accordingly **DISMISSES WITH PREJUDICE** Plaintiffs'

17  first four causes of action.  In addition to the flaws common to all of Plaintiffs' Consumer Protection

18  Claims described above, those claims also fail for reasons specific to each.  The Court discusses those

19  failures in the subsections below.

20          a.   **Plaintiffs' First Cause of Action: Violations of California's Unfair Competition**
               **Law.**

21          California's UCL, CAL. BUS. & PROF. CODE §§ 17200-17210, prohibits "any unlawful, unfair

22  or fraudulent business act or practice."  Id. § 17200.  Because Section 17200 is written in the

23  disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices,

24  (2) unfair acts or practices, and (3) fraudulent acts or practices.  Cel-Tech Commc'ns, Inc. v. Los

25  Angeles Cellular Tel. Co., 83 Cal. Rptr. 2d 548, 561 (Cal. 1999).

26              i.   **The Unlawful Prong of the UCL**

27

28

By proscribing "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable." Id. at 560-61.  Practices may, however, be unfair or fraudulent under the UCL even if not proscribed by another law.  Morgan v. Harmonix Music Sys, Inc., 2009 WL 2031765, at *4 (N.D. Cal. July 7, 2009) (citing Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377, 383 (1992)).

Throughout the FACC, Plaintiffs allege that Sony violated several laws, but they do not link those claims to the UCL except by stating that "Sony's unlawful and unfair business acts and practices present a continuing threat to plaintiffs . . . ."  FACC ¶ 94.  In their Opposition, however, Plaintiffs expressly claim that Sony violated the "unlawful" prong of the UCL because it violated the CLRA, the Song-Beverly Act, and the Magnuson-Moss Warranty Act.  Pls.' Opp'n, at 20.  As discussed in more detail below, Plaintiffs have failed to state claims under any of those three statutes.  Moreover, though Plaintiffs have not linked any of their claims that Defendants violated other laws to the UCL's unlawful prong, it is worth noting that Plaintiffs have not sufficiently pleaded that Defendants have violated any law.  Consequently, Plaintiffs have failed to state a claim under the unlawful prong of the UCL.

### ii.   The Unfair Prong of the UCL

An act or practice is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Tietsworth, 2010 WL 1268093, at *9 (quoting Daugherty, 144 Cal. App. 4th at 839).  To sufficiently plead a claim under the UCL's "unfair" prong, plaintiffs must allege facts supporting all three elements.  Id.; see Daugherty, 144 Cal. App. 4th at 838-39 (finding that a claim did not constitute an unfair practice under the UCL because one of the elements was insufficiently pleaded).

Failure to disclose a defect that might shorten the effective life span of a component part to a consumer product does not constitute a "substantial injury" under the unfair practices prong of the UCL where the product functions as warranted throughout the term of its Express Warranty.  See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1026-27 (9th Cir.2008) (quoting Daugherty, 144 Cal. App. 4th at 838-39).  Plaintiffs have not alleged that the televisions failed to function as warranted

throughout the term of the Express Warranty.  As a result, Plaintiffs' claim under the UCL's unfair

prong fails because they have not alleged a substantial injury.

### iii.  **The Fraudulent Practices Prong of the UCL**

The FACC does not explicitly allege violations under the UCL's fraud prong, but Plaintiffs

argue in their opposition that they have sufficiently pleaded fraudulent practices under the UCL.  See

FACC at ¶¶ 88-95 (stating a cause of action for "unlawful and unfair business acts and practices," but

only actually alleging "unfair" acts); Pls.' Opp'n at 19-20 (discussing the UCL's "fraud" prong).

Unlike common law fraud, a party can show a violation of the UCL's "fraudulent practices"

prong without allegations of actual deception.  See Morgan, 2009 WL 2031765, at *5 (citations

omitted).  The term "fraudulent" as used in Section 17200 "does not refer to the common law tort of

fraud" but only requires a showing members of the public "are likely to be deceived."  Puentes v.

Wells Fargo Home Mortg., Inc., 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008) (quoting Saunders v.

Superior Court, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994).  "Unless the challenged conduct 'targets a

particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable

consumer.'"  Puentes, 72 Cal. Rptr. 3d at 909 (quoting Aron v. U-Haul Co. of Cal. , 49 Cal. Rptr. 3d

555, 562 (Ct. App. 2006)).  But claims under the UCL's fraudulent practices prong still require a

plaintiff to plead that the alleged misrepresentation was directly related to the plaintiff's injurious

conduct, and that the plaintiff actually relied on the alleged misrepresentation.  In re Tobacco II Cases,

46 Cal. 4th 298, 326-27 (2009).  A plaintiff need not, however, allege that the misrepresentation was

the "sole or even the predominant" cause of the plaintiff's injury.  Id.

Nevertheless, claims under Section 17200 that are grounded in fraud still must be pleaded with

particularity under Rule 9(b).  See Kearns, 567 F.3d at 1125 (citing Vess, 317 F.3d at 1102-05) ("We

have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of

the . . . UCL.").  A plaintiff therefore "must include a description of the 'time, place, and specific

content of the false representations as well as the parties to the misrepresentations.'"  In re Facebook

PPC Advertising Litigation, 2010 WL 3341062, at *9 (N.D. Cal. Aug. 25, 2010) (quoting Swartz v.

KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)).  But where a plaintiff alleges fraud based on

omissions and "exposure to a long-term advertising campaign, the plaintiff is not required to plead

with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."  Tobacco II, 46 Cal. 4th at 328; see also In re Facebook, 2010 WL 3341062, at *9 (citing Washington v. Baenziger, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987)) ("[I]n the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act . . . [and therefore] may plead fraud in alternative ways.").  A plaintiff alleging that the defendant failed to disclose material facts must, however, establish that the defendant had a duty to disclose those facts.  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.").

As discussed above, Plaintiffs cannot sufficiently plead reliance because (1) Plaintiffs have not sufficiently pleaded that the alleged representations were false at the time they were made, and (2) the allegedly false or misleading statements were nothing more than non-actionable puffery.

Furthermore, because the alleged misrepresentations in this case do not relate to the claimed defect, Plaintiffs cannot sufficiently plead reliance.  See Daugherty, 144 Cal. App. 4th at 835, 838-39 (citing Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1275-76 (2006)) (alleged misrepresentations were not actionable under the CLRA and UCL because they did not relate to alleged defect); see also Tobacco II, 46 Cal. 4th at 327-28 (outlining the standard for pleading reliance under the UCL and highlighting cases in which plaintiffs had alleged (1) that their decisions to begin and to continue smoking caused detrimental health effects, and (2) those decisions were influenced by the tobacco industry's repeated assurances over the course of decades that no definitive connection existed between smoking and various diseases).

Thus, because Plaintiffs have not sufficiently alleged Sony engaged in conduct likely to deceive consumers, they have failed to state a claim under the fraud prong of the UCL.

### b. **Plaintiffs' Second Cause of Action: Violations of California's False Advertising Law.**

Plaintiff's second cause of action is for false advertising in violation of California's FAL, CAL. BUS. & PROF. CODE §§ 17500-17509.  The FAL proscribes the dissemination of statements that are "untrue, misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  CAL. BUS. & PROF. CODE § 17500.  "This provision has been

1    'interpreted broadly to embrace not only advertising which is false, but also advertising which

2    although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive

3    or confuse the public.'" Inter-Mark USA, Inc. v. Intuit, Inc., No. C-07-04178 JCS, 2008 WL 552482,

4    at *9 (N.D. Cal. Feb. 27, 2008) (quoting Leoni v. State Bar, 39 Cal. 3d 609, 626 (1985)).

5        "The degree of particularity required in pleading a Section 17500 claim depends on the nature

6    of the allegations in the claim.  In particular, although fraud is not an essential element of a Section

7    17500 claim, where a plaintiff alleges fraud as the basis for a violation of that provision, the

8    particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to the fraud

9    allegations." Inter-Mark, 2008 WL 552482, at *9-10 (citing Vess, 317 F.3d at 1105).  "If that

10   requirement is not met, the court must disregard the fraud allegations to determine whether a claim has

11   been stated under the notice pleading standards of Rule 8(a).  Under that standard, a Section 17500

12   claim need be alleged only with 'reasonable particularity.'" Id. (citing Khoury v. Maly's of Cal., Inc.,

13   14 Cal. App. 4th 612, 619 (1993)).  In either case, a plaintiff alleging violations of the FAL must allege

14   actual reliance.  See Oestreicher, 544 F. Supp. 2d at 973-74 & n.7.

15       Plaintiffs have failed to identify specific advertisements, when and where they were shown, or

16   why they were untrue or misleading.  Whether governed by Rule 9(b) or Rule 8's more lax pleading

17   standards, Plaintiffs' failure to identify specific advertisements does not provide Sony with adequate

18   notice of its alleged violations of the FAL.  Inter-Mark, 2008 WL 552482, at *10; see VP Racing

19   Fuels, Inc. v. Gen. Petroleum, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009) (citation omitted) ("The

20   underlying element of a false advertising claim is some type of advertising statement."); see also Tayag

21   v. Nat'l City Bank, No. C 09-667 SBA, 2009 WL 943897, at *2 (N.D. Cal. Apr. 7, 2009) (for FAL or

22   UCL claims rooted in fraud, "[t]he content of the alleged misrepresentation is necessary to state a

23   claim").  Moreover, as discussed above, even if Plaintiffs had identified particular advertisements

24   making the representations on which Plaintiffs have based their claims, (1) the statements on which

25   Plaintiffs have rested their claims are mere puffery and are thus not actionable under the FAL, and

26   (2) Plaintiffs have not sufficiently shown that the statements were false or misleading when made.  See

27   Oestreicher, 544 F. Supp. 2d at 973-74.  Plaintiffs' FAL claims fail as a result, and the Court

28   accordingly **DISMISSES WITH PREJUDICE** Plaintiffs' second cause of action.

c. **Plaintiffs' Third Cause of Action: Violations of California's Consumer Legal Remedies Act.**

Plaintiff's third cause of action alleges that, in violation of California's CLRA, CAL. CIV. CODE §§ 1750-1784, Sony failed to disclose information about the defect in the televisions and falsely advertised that the televisions provided high-quality video playback.

As an initial matter, the CLRA requires that, "[i]n any action [under the CLRA], concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." CAL. CIV. CODE § 1780(d).  If "a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice."  Id. Judge Whalen previously dismissed Plaintiffs' CLRA claims because of Plaintiffs' failure to file the statutorily required affidavits with their consolidated complaint.  Doc. No. 48, at 12.  Yet Plaintiffs have not remedied this issue: of the forty-seven plaintiffs named in the FACC, only one, Mr. Julio Real, has filed the required affidavit.  See Declaration of Julio Real Pursuant to Civil Code Section 1780(d), Doc. No. 50; FACC ¶¶ 5-51 (naming the individual plaintiffs).  Accordingly, the Court dismisses the third cause of action filed by all plaintiffs except Mr. Real for their failure to file the required affidavit.  CAL. CIV. CODE § 1780(d).

Even setting aside the issue of the required affidavits, all Plaintiffs have failed state a claim under the CLRA.  Where a manufacturer of consumer goods has expressly warranted a product, the manufacturer cannot be liable under the CLRA for failing to disclose information about a defect that manifests itself outside of the Express Warranty period, unless (1) the omitted fact runs counter to a representation made by the defendant, or (2) the defendant had a duty to disclose the omitted information.  Oestreicher, 544 F. Supp. 2d at 969 (citing Daugherty, 136 Cal. App. 4th at 835).  Plaintiffs' allegations do not fit either exception.

Plaintiffs have not alleged that Sony has made any representations contrary to omitted information about the defect.  First, as discussed above, the alleged misrepresentations on which Plaintiffs' claims rest are non-actionable puffery.  Second, Plaintiffs have not claimed that Sony made any representations that run counter to the allegedly omitted fact: that the televisions' optical block wore out over time.  Plaintiffs have not alleged that the televisions failed to perform as warranted; they

16

instead take issue with—but point to no representations regarding—the televisions' performance after the expiration of the Express Warranty period.[6]

Nor did Sony have a duty to disclose information about the alleged defect.  First, and again, Plaintiffs have not sufficiently alleged that Sony was aware of the defect at the time that Plaintiffs purchased; Sony had no duty to disclose facts of which it was unaware.  Second, even assuming that Sony was aware of the defect, under the CLRA, a manufacturer's duty to disclose information related to defect that manifests itself after the expiration of an Express Warranty is limited to issues related to product safety.[7]  Oestreicher, 544 F. Supp. 2d at 969 (citing Daugherty, 136 Cal. App. 4th at 835).  Plaintiffs have not alleged that the defect related to product safety.  Thus, Sony had no duty under the CLRA to disclose information about the alleged defect.  See id. at 970.

Plaintiffs, relying on Falk v. General Motors Corp., 496 F. Supp. 2d 1088 (N.D. Cal. 2007), argue that "Daugherty does not impose a 'safety' limitation on a duty to disclose."  Pls.' Opp'n at 18.  Even under Falk, however, a manufacturer's duty to disclose under the CLRA is limited to safety-related issues.

---

[6] Plaintiffs have attempted present one sentence taken from the over eighty pages of operating instructions that accompanied the televisions—"[t]o enjoy your TV for years to come and maintain its original picture quality, you should perform periodic maintenance"—as a representation that runs contrary to the omitted facts about the optical block.  FACC ¶ 70.  Again, such a statement is mere puffery.  Tietsworth, 2010 WL 1268093, at *10-12 (dismissing UCL and CLRA claims because the defendant's representations, found in the product's instruction manual, that the product was "designed, manufactured and tested for years of dependable operations" were non-actionable puffery).  Even if the Court were to construe the sentence highlighted by Plaintiffs as both more than mere puffery and as a statement contrary to the allegedly omitted facts about the defect, Plaintiffs' CLRA claim still fails.  As discussed above, Plaintiffs have not sufficiently pleaded that Sony knew of the defect prior to the sale of the televisions.  Sony cannot be liable for failing to disclose a fact of which it was not aware.  See Smith, 160 F. Supp. 2d at 1152 (citation omitted) ("[T]he plaintiff must plead facts explaining why the statement was false when it was made.").

[7] To impose on manufacturers a broad duty to disclose such that a plaintiff need only allege disappointed expectations to survive a motion to dismiss claims under the CLRA would render meaningless time and other limitations that manufacturers are permitted to place on Express Warranty periods.  See Hovsepian v. Apple, Inc., Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 WL 2591445, at *3 n.4 (N.D. Cal. Aug. 21, 2009) (quoting Oestreicher, 544 F. Supp. 2d at 972).  "[K]nowledge that a product is likely to fail at some point cannot give rise by itself to an actionable claim because '[s]uch knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired.'"  Id. (quoting Oestreicher, 544 F. Supp. 2d at 972) (alteration in original).

The <u>Falk</u> court found that a failure to disclose can constitute actionable fraud under the CLRA in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." 496 F. Supp. 2d at 1095 (internal citations omitted). Plaintiffs argue that their CLRA claims satisfy the second and third <u>Falk</u> scenarios, both of which turn on the "materiality" of the information omitted.

Materiality under the CLRA "is judged by the effect on a 'reasonable consumer'"; that is, information is material if its disclosure would have caused a reasonable consumer to behave differently. <u>Falk</u>, 496 F. Supp. 2d at 1095. In <u>Falk</u>, however, the defect at issue related to an automobile's speedometer, which certainly relates to consumers' safe use of the product in question—an automobile. As the <u>Falk</u> court itself noted:

> Common experience supports plaintiffs' claim that a potential car buyer would view as material a defective speedometer. That a speedometer is prone to fail and to read a different speed than the vehicle's actual speed, even a difference of ten miles per hour, would be material to the reasonable consumer, driver and passenger. Such a faulty speedometer easily would lead to traveling at unsafe speeds and moving-violation penalties.

<u>Id.</u> at 1096. Thus, in the context of the CLRA, materiality is also linked to safety considerations.[8] <u>Oestreicher</u>, 544 F. Supp. 2d at 971. Because the defect Plaintiffs allege in this case had no impact on the safe use of the televisions, information about it was immaterial for the purpose of stating a CLRA claim. Sony had no duty to disclose information about a defect that would not manifest itself until after the Express Warranty expired. Plaintiffs have therefore failed to state a claim under the CLRA. Accordingly, Plaintiffs' claim under the CLRA is **DISMISSED WITH PREJUDICE**.

---

[8] Plaintiffs also rely on <u>Tietsworth v. Sears</u>, in which the court found omitted information about an electronic defect in washing machines that caused consumers to have to initiate multiple cycles to complete a load of laundry or to pay costly repair bills to be material under the CLRA. 2010 WL 1268093, at *10-11. <u>Tietsworth</u>, however, is distinguishable from this case because the plaintiffs in that case alleged that they began experiencing problems "within the first months of purchasing the Machine"—i.e., *within* the express warranty period. <u>Id.</u> at *3-4. The <u>Tietsworth</u> plaintiffs also sought repairs *within* the warranty period. <u>Id.</u> The Court limits its analysis here to a manufacturer's duty under the CLRA to disclose information related to a defect that manifests itself *after* the expiration of a product's express warranty.

d.  **Plaintiffs' Fourth Cause of Action: Violations of Various Other States' Consumer Protection Laws.**

Plaintiffs allege violations of the laws of approximately forty states in which various class members reside, stated in the alternative in the event that the Court upholds Plaintiffs' claims but decides that the laws of one of the states other than California in which Plaintiffs' reside should apply. Plaintiffs' claims under these various states' laws are factually identical, and they are grounded in theories of fraudulent representation and concealment: "By selling the televisions to consumers while concealing and failing to disclose the defect and, without revealing that the televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the defect, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the defect, defendants violated [various states' consumer protection laws]."  FACC ¶¶ 109-159.

In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.  See Speyer v. Avis Rent a Car Sys., Inc., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) (citing Barth v. Firestone Tire and Rubber Co., 661 F. Supp. 193, 203 (N.D. Cal. 1987)) (in ruling on a motion to dismiss a class action complaint prior to class certification, courts generally consider only the claims of the named plaintiffs).  But "Plaintiffs cannot use class actions to escape pleading requirements."  In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litig., 701 F. Supp. 2d 356, 378 (E.D.N.Y. 2010).  Merely listing another state's consumer fraud statutes is insufficient to state a claim; "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65; see Wright v. Gen. Mills, Inc., 08-CV-1532 L(NLS), 2009 WL 3247148, at *5 (S.D. Cal. Sept. 30, 2009).  Moreover, for state law claims grounded in fraud, "the *circumstances* of the fraud must be stated with particularity" under Rule 9(b).  Vess, 317 F.3d at 1103-04 (emphasis in original); Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006).

Again, Plaintiffs' claims under alternative state laws fail because (1) the representations on which Plaintiffs' claims rely are non-actionable puffery, and (2) Plaintiffs have failed to sufficiently allege that the statements on which the alternative state law claims stand were false when they were made.  Moreover, Plaintiffs have failed to state with any particularity "'the who, what, when, where,

1 and how' of the misconduct charged," and have thus failed to satisfactorily state a claim under Rule

2 9(b). Vess, 317 F.3d at 1103-04 (quoting Cooper, 137 F.3d at 627). Accordingly, Plaintiffs' fourth

3 cause of action is **DISMISSED WITH PREJUDICE**.

4     B. **Plaintiffs' Fifth Cause of Action: Claims Under the Song-Beverly Consumer Warranty**

5     **Act.**

6     Plaintiffs claim that Sony breached the implied warranty of merchantability under Sections

7 1791.1, 1792, and 1792.1 of the Song-Beverly Act by selling televisions containing a latent defect.

8 FACC ¶¶ 161-162. They also claim that Sony violated Sections 1793.2(a)(3) and 1793.2(b) of the SBA

9 by failing to repair or replace the defective televisions within thirty days. Id. ¶¶ 163-164.

10     The Song-Beverly Act is limited to actions involving "consumer goods that are sold at retail in

11 [California]". CAL. CIV. CODE CAL. CIV. CODE § 1792. Courts have routinely dismissed SBA claims

12 against manufacturers where none of the named class members could plead that they purchased the

13 goods "at retail" in California. See, e.g., In re NVIDIA GPU Litig., 2009 WL 4020104, at *5 (N.D.

14 Cal. Nov. 19, 2009) (dismissing an SBA claim where it was not restricted to class members who

15 purchased goods in California); Morgan, 2009 WL 2031765, at *2 (dismissing SBA claim because

16 plaintiffs failed to identify where and from whom they purchased the goods); Anunziato, 402 F. Supp.

17 2d at 1142 (dismissing SBA claims because class representatives purchased the disputed goods outside

18 of California).

19     Judge Whelan previously dismissed this claim for Plaintiffs' failure to assert that any of the

20 named plaintiffs purchased their televisions in California. Doc. No. 48, at 14; accord, e.g., Morgan,

21 2009 WL 2031765, at *2; see also Anunziato, 402 F. Supp. 2d at 1142 (finding that a plaintiff's SBA

22 claim failed as a matter of law where the plaintiff had purchased the product over the internet from his

23 home in Massachusetts). Judge Whelan also correctly noted that Plaintiffs' "vague assertion that

24 'countless' unnamed class members purchased televisions in California through Defendants' website is

25 not sufficient." Doc. No. 48, at 14; see also Morgan, 2009 WL 2031765, at *2 n.4 ("Whether absent

26 class members have standing to sue under California Consumer Protection Laws is better addressed in

27 connection with class certification."). Yet Plaintiffs still fail to assert where any named class member

28 purchased her television, and they have therefore failed to plead the California "at retail" requirement.

Additionally, the SBA places an affirmative duty on consumers to deliver a product a malfunctioning product to the manufacturer for repair *within* the Express Warranty period.  CAL. CIV. CODE CAL. CIV. CODE § 1793.02(c) (stating that a seller shall repair or replace a malfunctioning product "[i]f the buyer returns the device *within the period specified in the written warranty*") (emphasis added); see also, e.g., Robertson v. Fleetwood Travel Trailers of Cal., Inc., 144 Cal. App. 4th 785, 807-08 (2006) (noting that the consumer bears the burden of delivering the product to the seller for replacement or repair).  Plaintiffs have not alleged that the televisions malfunctioned or that they requested that Sony repair the televisions within the warranty period.

Accordingly, Plaintiffs' claims under the Song-Beverly Act are **DISMISSED WITH PREJUDICE**.

**C.   Plaintiffs' Seventh Cause of Action: Breach of Express Warranty.**

Plaintiffs claim that Sony expressly warranted that the televisions were free from defects and that Sony breached its Express Warranty of the televisions at the point of sale, even though the defect did not manifest until after the one-year Express Warranty period expired.  FACC ¶¶ 171-180.

As an initial matter, Plaintiffs contend that the law of the case doctrine bars the Court from considering Sony's motion to dismiss their Express Warranty claim because (1) Judge Whelan found Plaintiffs' pleading sufficient when he ruled on Sony's motion to dismiss this claim in Plaintiffs' consolidated complaint, and (2) this claim remains substantively unchanged in the FACC.  See Pls.' Opp'n at 6-7.  The Court disagrees, and will consider Sony's motion to dismiss Plaintiffs' claim for breach of an Express Warranty.

Judge Whalen maintained Plaintiffs' breach of Express Warranty claim but dismissed all other claims.  Rather than proceed with only the claim for breach of Express Warranty, Plaintiffs chose to file an amended complaint.  When Plaintiffs filed the FACC, it superseded their previous complaint, and Sony was therefore free to move again for dismissal.  See, e.g., Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-existent."); Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1989) (" [A]n amended pleading supersedes the original."); Stamas v. County of Madera, No. CV F 09-0753 LJO SMS, 2010 WL 289310, at *4 (E.D. Cal. 2010 Jan. 15, 2010) ("[A]n

amended pleading is a new round of pleadings . . . and is subject to the same challenges as the original (i.e., motion to dismiss, to strike, for more definite statement).").

Moreover, the law of the case doctrine is discretionary, and "is in no way a limit on a court's power to revisit, revise, or rescind an interlocutory order prior to entry of final judgment in the case. City of Los Angeles v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001) (internal quotation marks and citations omitted).  Thus, the law of the case doctrine does not bar the Court from considering Sony's motion to dismiss Plaintiffs claim for breach of Express Warranty.

"The general rule is that an Express Warranty does not cover repairs made after the applicable time or [other limitations] have elapsed."  Daugherty 144 Cal.App.4th at 830 (quoting Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986)).  The Ninth Circuit explains the justification for this rule in Clemens v. DaimlerChrysler Corp.:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life.  If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted. Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.

534 F.3d 1017, 1022-23 (9th Cir. 2008); see also Oestreicher, 544 F. Supp. 2d at 969-74 (applying Daugherty and dismissing UCL, FAL, and CLRA claims based on failure to disclose alleged defect in computers that manifested after warranty expired).

Plaintiffs argue that Hicks v. Kaufman & Broad Home Corp. establishes an exception to that general rule for products that, at the point of sale, were "substantially certain to result in malfunction during the useful life of the product."  See 89 Cal. App. 4th 908, 923 (2001); see also Long v. Hewlett-Packard Co., 316 Fed. Appx. 585, 586 (9th Cir. 2009) (citing Hicks and noting that there "*may* be an exception to [the general rule under Daugherty] for products that are truly 'substantially likely to fail,' during their useful lives," but affirming the district court's dismissal of the plaintiffs' claims for breach of Express Warranty where the product in question did not malfunction until after the warranty period expired) (emphasis added).  If Hicks does in fact create such an exception to the general rule that an Express Warranty does not make a manufacturer responsible for repairs required after the warranty

1   expires, however, it does not apply to consumer goods such as televisions.[9]  Hicks dealt with

2   complaints that the foundations built for new homes suffered from a serious defect that caused the

3   foundation to split into pieces and to, among other things, "permit moisture, dirt and insects to intrude

4   into the house, [and] cause bumps in the flooring."[10]  89 Cal. App. 4th at 911.  While the Hicks

5   exception may make sense for goods—such as the foundation of a home—that consumers may

6   reasonably expect to last for decades, applying such an exception to consumer goods—such as

7   televisions or other electronics—about which customer-expectations will be highly subjective and will

8   vary widely "would eliminate term limits on warranties, effectively making them perpetual or at least

9   for the 'useful life' of the product."  Oestreicher, 544 F. Supp. 2d at 972 (refusing to extend an Express

10  Warranty at issue in a CLRA claim and stating that the rationale from Abraham and Daugherty

11  "applies with even greater force to the component parts of [consumer goods such as] laptop computers

12  where consumer expectations are even more subjective and likely unreliable, and where usage will

13  greatly vary from consumer to consumer"); Daugherty, 144 Cal. App. 4th at 830-32 (rejecting the

14  notion that a latent defect, discovered outside the limits of a written warranty, may form the basis for a

15  valid express warranty claim, even if the warrantor was aware of the defect at the time of sale).

16          To expand the scope of any exception that may exist under Hicks to the extent that Plaintiffs

17  request would swallow the general rule that an Express Warranty does not cover repairs that become

18  necessary after the applicable time period has elapsed.  The Court declines to do so.  Because Plaintiffs

19  have not alleged that the defect presented itself during the Express Warranty period, Plaintiffs' have

20  failed to sufficiently plead that Sony breached the Express Warranty provided with the televisions.

21  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' Express Warranty claim.

22

23          [9] While the Court does not reach the issue of whether Hicks in fact establishes an exception the
    general rule under Daugherty in any context outside of consumer goods, the Court does note that
24  (1) Daugherty was decided five years after Hicks, and (2) Hicks, unlike Daugherty, did not address a
    motion to dismiss or demurrer, but the very different procedural question of class certification.

25          [10] Moreover, the Hicks plaintiffs brought their action *before* the relevant express warranty
26  period—ten years in that case—had actually expired; the issue of whether a manufacturer might face
    liability for a defect that manifests itself outside of the express warranty period arose because some
27  members of the putative class had not yet suffered actual property damage but sought immediate
    repairs to prevent damage to the foundation of their homes.  See Hicks, 89 Cal. App. 4th at 917
28  (discussing the ten-year warranty and plaintiffs' expert's opinion that immediate repairs were necessary
    regardless of the foundation's then-current condition).

D. **Plaintiffs' Eighth Cause of Action: Breach of Implied Warranty.**

Plaintiffs allege that, because the televisions were allegedly defective when sold, Sony violated both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.  FACC ¶¶ 181-188.

Notably, Judge Whelan previously dismissed Plaintiffs' claim for breach of implied warranties for Plaintiffs' failure to sufficiently plead vertical privity.  Plaintiffs argue that the Song-Beverly Act eliminated the privity requirement under California law.  Pls.' Opp'n at 12-13.  While some authority may support Plaintiffs' argument in the context of a Song-Beverly Act claim, see Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1116 n.9 (C.D. Cal. 2007), as discussed above, Plaintiffs' did not sufficiently plead their Song-Beverly Act claim.  Thus, the vertical privity inquiry remains relevant in this case.  See Doc. No. 48 at 16; Tietsworth, 2010 WL 1268093, at *14

To state a claim for breach of an implied warranty, plaintiffs must establish vertical privity with the warrantor.  Arabian v. Sony Elecs., Inc., 2007 WL 627977, at *10 (S.D. Cal. 2007); Anunziato, 402 F. Supp. 2d at 1141-42.  As Judge Whelan previously held, Plaintiffs' suggestion that some class members may be able to establish privity through internet sales because Sony is a large internet retailer is insufficient.  Doc. No. 48 at 16-17.  "To survive a motion to dismiss, Plaintiffs must state the requirements for all named class members."  Id. at 16.  Plaintiffs have not alleged vertical privity.  Therefore, they have not sufficiently pleaded their implied warranty claim.

Even setting aside the privity requirement, Plaintiffs' implied warranty claim fails.  By limiting the duration of an Express Warranty, manufacturers may impose limits on implied warranties.  Hovsepian v. Apple, 2009 WL 2591445, at *8 (N.D. Cal. Aug. 21, 2009) (citing CAL. COM. CODE § 2316); Atkinson v. Elk Corp. of Tex., 142 Cal. App. 4th 212, 231 (2006) ("[T]he duration of the implied warranty is the length of the Express Warranty.").  "The duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer."  CAL. CIV. CODE § 1791.1(c); see Tietsworth, 2010 WL 1268093, at *14 (citations omitted) ("The duration of an implied

1    warranty of merchantability is one year if the express warranty is one year or more."). Accordingly,

2    Plaintiffs have failed to state a claim for breach of implied warranties because they have not

3    sufficiently alleged that Sony breached the implied warranties within the one-year Express Warranty

4    period.

5        Instead, Plaintiffs argue that Sony's knowledge of the defect rendered the one-year limitation

6    on the implied warranties unconscionable, and therefore unenforceable, and that Plaintiffs' implied

7    warranty claim should survive as a result. Pls.' Opp'n at 9-11. That argument is unavailing.

8        First, California law expressly limits, by statute, implied warranties to one year or less (though

9    no less than sixty days). CAL. CIV. CODE § 1791.1(c). Thus, because the temporal limit imposed on

10    the implied warranties corresponds to the *longest* permitted under California law, they are reasonable.

11        Second, even ignoring that fact, Plaintiffs have not alleged circumstances demonstrating

12    unconscionability. Where plaintiffs allege facts establishing unequal bargaining power such that the

13    weaker party had no meaningful alternative to accepting the powerful party's terms, an express

14    warranty's limitation of the duration of implied warranties may be deemed unconscionable. Carlson v.

15    Gen. Motors Corp., 883 F.2d 287, 294 (4th Cir. 1989); see Aron, 143 Cal. App. 4th at 808.

16        Plaintiffs claim that the limitation on the implied warranties is unconscionable because Sony

17    knew of but failed to disclose information about the defect when Plaintiffs purchased the televisions.

18    Pls.' Opp'n at 9-11. But, as discussed above, Plaintiffs have not sufficiently alleged that Sony knew of

19    the defect before the point of sale. As a result, Plaintiffs cannot establish that Sony enjoyed superior

20    bargaining power.

21        Additionally, any claim of unconscionability—like Plaintiffs'—based on the notion that one

22    party did not enjoy a meaningful alternative to accepting the powerful party's terms "may be defeated

23    if the complaining party had reasonably available alternative sources of supply from which to obtain

24    the desired goods or services free of the terms claimed to be unconscionable." Tietsworth, 2010 WL

25    1268093, at *11 (quoting Dean Witter Reynolds, Inc. v. Superior Court, 211 Cal. App. 3d 758, 768

26    (1989)). Plaintiffs have not alleged that they could not have easily purchased another brand of

27    television.

28        Accordingly, Plaintiffs' claim for breach of implied warranty is **DISMISSED WITH**

   **PREJUDICE**.

1

2      **E.  Plaintiffs' Sixth Cause of Action: Violation of the Magnuson-Moss Warranty Act.**

3            Plaintiffs allege that by breaching the express and implied warranties, Sony has violated the

4      Magnuson-Moss Act, 15 U.S.C. §§ 2301-2312.  FACC ¶¶ 166-170.  The Magnuson-Moss Act

5      provides a federal cause of action for state law express and implied warranty claims.  See 15 U.S.C.

6      § 2301(7); Stearns v. Select Comfort Retail Corp., No. 08-2746 JF, 2009 WL 1635931, at *9 (N.D.

7      Cal. June 5, 2009).  "However, [the Magnuson-Moss Act] does not expand the rights under those

8      claims, and dismissal of the state law claims requires the same disposition with respect to an associated

9      MMWA claim."  Stearns, 2009 WL 1635931, at *9; see also Clemens, 534 F.3d at 1022 ("[C]laims

10     under the Magnuson-Moss Act stand or fall with [the plaintiff's] express and implied warranty claims

11     under state law.").

12           Because Plaintiffs have failed to state any valid claims under state law for breach of express or

13     implied warranties, their MMWA claim must also fail.  Accordingly, the Court **DISMISSES WITH**

14     **PREJUDICE** Plaintiffs' claim under the Magnuson-Moss Act.

15

16                                              **CONCLUSION**

17           Defendants' motion to dismiss the First Amended Consolidated Complaint is **GRANTED**, and

18     the First Amended Consolidated Complaint is **DISMISSED WITH PREJUDICE**.

19

20           **IT IS SO ORDERED.**

21

22     **DATED:** 11/30/2010

23                                              **IRMA E. GONZALEZ, Chief Judge**

24                                              **United States District Court**

25

26

27

28